UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

U.S. DISTRICT COURT
N.D. OF N.Y.
FILED

DEC 1 0 2003

LAWRENCE K. BAERMAN, CLERK
ALBANY

TERRY REED,

                                  Petitioner

                    - v -

GEORGE DUNCAN, Superintendent Great
Meadow Correctional Facility,

                                  Respondent.

Civ. No. 9:00-CV-1177
(LEK/RFT)

**APPEARANCES:**

TERRY REED, 97-B-0929
Petitioner, *Pro Se*
Elmira Correctional Facility
Box 500
Elmira, New York 14902-0500

HON. ELIOT SPITZER
Attorney General of the State of New York
Attorney for Respondent
207 Genesee Street
Utica, New York 13501

**OF COUNSEL:**

G. LAWRENCE DILLON, ESQ.
Assistant Attorney General

**RANDOLPH F. TREECE**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION and ORDER**[1]

*Pro se* Petitioner Terry Reed, currently incarcerated at Elmira Correctional Facility, seeks a

Writ of *Habeas Corpus* pursuant to 28 U.S.C. § 2254.  Reed's incarceration stems from his

conviction in 1997, based upon his plea of guilty for the crime of attempted murder.  Reed has

---

[1]This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

asserted several grounds in support of his request for federal habeas intervention. Respondent opposes the relief sought by Baxter and argues that his application should be denied and dismissed. For the reasons that follow, it is recommended that this action be dismissed in its entirety.

## I. BACKGROUND

On October 31, 1995, Reed was indicted by an Oneida County Grand Jury for the crimes of Attempted Murder in the Second Degree, N.Y. PENAL LAW §§ 110.00 & 125.25, and two counts of Assault in the First Degree, N.Y. PENAL LAW § 120.10. Appendix ["App."] at p. 7(i)-(ii). According to the People's Bill of Particulars, on September 20, 1995, Reed, along with three other individuals, brought James Spann to a vacant apartment building, held him at gunpoint, tied his feet and hands with cable wire, and, after carrying him into another room, shot him five times in the head. Record on Appeal ["R."] at p. 28. Miraculously, the victim survived and made a positive photographic identification of Petitioner.[2] R. at p. 48 & 52-53. On May 22, 1996, pursuant to N.Y. CRIM. PROC. LAW § 730, the Honorable Patrick L. Kirk, Oneida County Court Judge, issued an order for a psychiatric examination to assess whether Petitioner was competent to stand trial. R. at pp. 19-22. After reviewing two psychiatrist reports and conducting a hearing on the matter, Judge Kirk issued an Order of Commitment, dated July 22, 1996, which stated that Petitioner, as a result of mental disease or defect, lacked capacity to understand the proceedings against him and to assist in his defense. R. at pp. 6-7. Subsequently, in October 1996, Petitioner was declared competent to stand trial based upon psychiatric reports submitted from the Mid-Hudson Psychiatric Center. A. at

---

[2] Petitioner was reported to have made an inculpatory statement to a public servant during a pre-trial proceeding to the effect of, "next time I'll snuff you." R. at p. 51. Following *Wade* and *Huntley* hearings, conducted on March 19 and March 28, 1996, respectively, the Judge ruled not to suppress either the photo identification or the aforementioned statement. *See United States v. Wade*, 388 U.S. 218 (1967); *People v. Huntley*, 204 N.E.2d 179 (N.Y. 1965).

p. 48.

On January 6, 1997, in satisfaction of the entire indictment as well as an outstanding earlier indictment, Reed pled guilty to Attempted Murder in the Second Degree. A. at pp. 49-57. Just prior to his sentencing, Reed filed a motion to withdraw his guilty plea. R. at pp. 13-15. Reed's sole justification for the motion was his purported ignorance of the maximum term of imprisonment in light of the fact that all of his discussions with his attorney focused only on the minimum term. *Id.* On March 12, 1997, the court denied Reed's motion to vacate his plea and sentenced him to the agreed upon indeterminate term of six to eighteen years incarceration. A. at pp. 49-57 & 69-75. As a condition of his guilty plea, Reed signed a waiver of his right to appeal. R. at pp. 11-12.

Some time later, waiver notwithstanding, Petitioner obtained permission from the New York State Appellate Division, Fourth Department, to file a late notice of appeal. A. at 77-81. In his appellate brief, he raised the following claims: 1) his guilty plea was not knowing, voluntary, or intelligent; 2) the motion to vacate his guilty plea was improperly denied; 3) the waiver of appeal was ineffective; and 4) the sentence imposed was unduly harsh. The Fourth Department rejected Reed's contentions and unanimously affirmed his conviction and guilty plea. *People v. Reed*, 705 N.Y.S.2d 309 (N.Y.A.D. 4th Dep't 2000). In a memorandum decision, the Appellate Division held,

> [w]e reject the contention that defendant's waiver of the right to appeal was ineffective. Unlike in *People v. Callahan* (80 NY2d 273, 283), there is a sufficient basis in the record for concluding that defendant's waiver of the right to appeal was knowing, intelligent and voluntary (*see, People v. Hidalgo*, 91 NY2d 733, 736). We also reject the contention that the plea was not knowingly, voluntarily and intelligently made. The record establishes that defendant was aware of the range of sentencing, and thus County Court did not abuse its discretion in denying defendant's motion to vacate the plea. Finally, the sentence is neither unduly harsh nor severe.

*Id.*

-3-

The New York State Court of Appeals denied Reed leave to appeal.[3] *People v. Reed*, 736 N.E.2d 869 (N.Y. 2000). One month later, Reed initiated the instant action.

In his initial Petition, Reed asserted several grounds in support of his request for federal habeas intervention, some of which he acknowledged had not been fully presented to the state courts. Dkt. No. 1, Pet. at ¶13. Upon review, the Honorable Norman A. Mordue, U.S. District Court Judge, assessed the Petition to be inadequate and ordered Petitioner to amend his Petition specifically demonstrating that he, in fact, exhausted his state court remedies; Judge Mordue admonished that failure to do so would result in summary dismissal. Dkt. No. 5. Petitioner obliged and filed an Amended Petition stating "all issues were exhausted and fairly presented to the state courts." Dkt. No. 6. With this averment on record, Judge Mordue ordered the Respondent to respond to the Petition. Dkt. No. 7.[4] Respondent complied and filed an Answer along with the State Court Record and a Memorandum of Law in Opposition to the Amended Petition. Dkt. Nos. 17-18.

## II. DISCUSSION

### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant habeas relief to a state prisoner on a claim unless the state court adjudicated the merits of the claim and such adjudication either

---

[3] It is not clear from the record which issues Reed raised in his application for leave to appeal.

[4] In this Order, Judge Mordue intimated that Petitioner's "Amended Petition" did not substitute the original Petition in toto as no grounds for relief were included in the Amended Petition. Dkt. No. 7 at p. 2 ("Reed filed a document styled by him as an amended petition . . . . [h]owever, it is clear that same is not intended to replace the original petition . . . as it does not assert any grounds for relief."). Accordingly, Judge Mordue ordered both the Original and Amended Petition be sent to Respondent. *Id.* Thus, this Court will construe the Amended Petition to merely supplement the Original and will consider both for review.

1) resulted in a decision that was contrary to, or involved an unreasonable application, of, clearly established Federal law, as determined by the Supreme Court of the United States; or
2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Miranda v. Bennett*, 322 F.3d 171, 177-78 (2d Cir. 2003); *Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001).

The petitioner bears the burden of proving by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Jones v. Vacco,* 126 F.3d 408, 415 (2d Cir. 1997); *Rivera v. New York*, 2003 WL 22234679, at *3 (S.D.N.Y. Aug. 28, 2003). The AEDPA also requires that "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Boyette*, 246 F.3d at 88 (quoting § 2254(e)(1)).

## B. Review of Reed's Claims

In his Petition, Reed lists various grounds for relief, some of which have not been exhausted. Specifically, Reed asserts 1) his plea of guilty was not made knowingly, voluntarily, nor intelligently; 2) his waiver of the right to appeal was ineffective; 3) his sentence was unduly harsh and excessive; 4) his motion to vacate his guilty plea was improperly denied; 5) he was incompetent to stand trial and enter a plea; 6) the prosecutor failed to disclose exculpatory evidence; 7) he had insufficient trial counsel; and 8) he was not afforded a speedy trial.

Prior to seeking federal habeas relief, a petitioner must exhaust available state remedies, or demonstrate that there is either an absence of available state remedies or that such remedies cannot adequately protect petitioner's rights. *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001) (quoting 28 U.S.C. § 2254(b)(1)); *Ellman v. Davis*, 42 F.3d 144, 147 (2d Cir. 1994). This exhaustion

requirement recognizes "respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions." *Daye v. Attorney General of New York*, 696 F.2d 186, 191 (2d Cir. 1982). Though both federal and state courts are charged with securing a state criminal defendant's federal rights, the state courts must initially be given the opportunity to consider and correct any violations of federal law. *Id.* "The chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court." *Glover v. Bennett*, 1998 WL 278272, at *1 (N.D.N.Y. May 21, 1998) (quoting *Daye*, 696 F.2d at 192).[5]

This exhaustion requirement is satisfied if the federal claim has been "fairly presented" to the state courts. *See Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). A claim has been "fairly presented" if the state courts are apprised of "both the factual and the legal premises of the claim [the petitioner] asserts in federal court." *Daye*, 696 F.2d at 191; *Morales v. Miller*, 41 F. Supp. 2d 364, 374 (E.D.N.Y. 1999). Thus, "the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." *Daye*, 696 F.2d at 192; *Morales*, 41 F. Supp. 2d at 374.

Upon reviewing the entire Record, it is clear to this Court that Reed's original posture of non-exhaustion was indeed accurate. It is questionable whether <u>any</u> of Reed's claims were sufficiently presented to the state courts in that this Court has not been provided with the application Reed filed with the Court of Appeals pursuant to N.Y. CRIM. PROC. LAW § 460.20. Thus, this Court

---

[5] Since the AEDPA's restriction on federal habeas power was premised upon the duty of state courts to uphold the Constitution and faithfully apply federal laws, the AEDPA's review standards apply only to federal claims which have been actually adjudicated on the merits in the state court. *Washington v. Shriver*, 255 F.3d 45, 52-55 (2d Cir. 2001). Accordingly, deference is not mandated under section 2254(d) if a state court decides the case on a procedural basis, rather than on the merits. *See Sellan v. Kuhlman*, 261 F.3d 303, 309-10 (2d Cir. 2001).

cannot say with any degree of certainty that all of the issues contained in Reed's Petition were properly presented. Since the New York State Court of Appeals denied leave for Reed to appeal, this Court must assume that proper notice and an application for leave to appeal were filed. *See* Dkt. No. 6, Am. Pet, N.Y.S. Ct. of App. Certificate Denying Leave to Appeal, dated July 7, 2000; *People v. Reed*, 736 N.E.2d 869 (N.Y. 2000); N.Y. CT. APP. R. 500.10 (directing all criminal leave applications to specifically identify the issues on which the application is based). However, having no record of specific issues presented to New York State's highest court, this Court cannot in good faith identify that the claims presented herein were properly raised on appeal, thus, our competence to address the Petition is questionable. *See Guerro v. Harris*, 461 F. Supp. 583, 585-86 (S.D.N.Y. 1978) ("As long as a federal court can identify the claim in the habeas corpus petition as the one raised on appeal through the state courts, the federal court is competent to answer the petition."). Notably, this Court could properly recommend dismissal of the entire Petition on the basis of total non-exhaustion. In light of the considerable time and resources already expended in addressing this Petition by both this Court and the Respondent, this Court will presume that at least the first four grounds of Petition were indeed presented to the highest state court since these claims were included in Reed's Appellate Brief to the Fourth Department, and therefore are fully exhausted.

Turning to the latter four grounds, it appears that none of these issues were ever presented to the Appellate Division, thus, at best, Reed has submitted a "mixed petition." Prior to the enactment of the AEDPA, federal courts were required to dismiss mixed petitions, thus requiring total exhaustion. *Rose v. Lundy*, 455 U.S. 509, 511 (1982). However, in light of the AEDPA, courts have discretion to deny on the merits habeas petitions containing unexhausted claims. 28 U.S.C. § 2254(b)(2); *see also Maziale v. Walker*, 2000 WL 33767753, at *3 (N.D.N.Y. May 4, 2000)

-7-

(Sharpe, M.J.).  Neither the Supreme Court nor the Second Circuit has indicated a standard a district court should employ to determine when to dismiss an unexhausted claim on the merits.  Generally, the district courts have utilized a frivolousness standard, wherein, patently frivolous unexhausted claims should be denied on the merits "so they do not fester in either the state or federal judicial system." *Heron v. People*, 1999 WL 1125059, at *3 (S.D.N.Y. Dec. 8, 1999) (citing *Harmon v. People*, 1999 WL 458171 (E.D.N.Y. June 25, 1999); *Terrence v. Senkowski*, 1999 WL 301690, at *3 n.5 (S.D.N.Y. May 12, 1999); *Hogan v. Ward*, 998 F. Supp. 290, 293 (W.D.N.Y. 1998)); *see also Maziale v. Walker*, 2000 WL 33767753, at *3 (N.D.N.Y. May 4, 2000) (Sharpe, M.J.) Whereas, if the non-exhausted claims are not frivolous, the district courts have gone back to the "total exhaustion" rule and dismissed the entire petition without prejudice. *Heron v. People*, 1999 WL 1125059, at *3 (S.D.N.Y. Dec. 8, 1999) (citations omitted).

In his September Order, Judge Mordue indicated that, in light of Petitioner's failure to fully exhaust, the Court would not exercise its discretion to reach the non-exhausted claims on the merits. This Court acknowledges that Reed's entire Petition may be dismissed on this basis alone. However, in the interest of preserving judicial resources, this Court finds it prudent at this juncture to address each ground in the Petition.

### 1. Exhausted Claims

### a. Waiver of Appeal and Plea of Guilty

Reed asserts that his plea of guilty in the Oneida County Court was not entered into knowingly, voluntarily, or intelligently.  In support of this ground, Reed asserts that before he entered his plea, he was not aware of the maximum term of imprisonment which would be imposed since his discussions with his attorney had only focused on the minimum term of six years.

Next, Reed contends that the signed waiver of his right to appeal was ineffective.  Reed asserts that

he signed the waiver out of fear of receiving more jail time and that he was not aware of the rights

he was waiving.

"A defendant may execute an appellate waiver as a plea condition, which generally

precludes both direct and collateral review." *Vasquez v. Filion*, 210 F. Supp. 2d 94, 199 (E.D.N.Y.

2002) (citing, *inter alia*, *U.S. v. Pipitone*, 67 F.3d 34, 39 (2d Cir. 1995)).  "The waiver is valid if

executed voluntarily and intelligently, and with the advice of counsel, and the sentence is within the

agreed upon range." *Vasquez*, 210 F. Supp. 2d at 199 (citing *Bello v. People*, 886 F. Supp. 1048,

1054 (W.D.N.Y. 1995)).  The Appellate Division determined that "there is sufficient basis in the

record for concluding that defendant's waiver of the right to appeal was knowing, intelligent, and

voluntary." *People v. Reed*, 705 N.Y.S.2d at 309 (internal citation omitted).  This factual finding is

entitled to deferential review under the AEDPA and Reed has not submitted any evidence that

rebuts this finding.  28 U.S.C. § 2254(e)(1); *see also Boyette*, 246 F.3d at 88.  Instead, he argues

that he signed the waiver out of fear that more jail time would be imposed.  The undersigned finds

that Petitioner has fallen far short of establishing by clear and convincing evidence that the

Appellate Division's holding was erroneous, therefore, this Court recommends denial on this

ground.

While the waiver prevents a defendant from taking a direct appeal on most grounds, it does

not preclude a challenge of the voluntariness of the plea itself since such a claim cannot be waived.

*Magee v. Romano*, 799 F. Supp. 296, 299 (E.D.N.Y. 1992).

It is well settled that a defendant who pleads guilty to a charge must do so voluntarily and

with knowledge of the consequences of such plea.  *North Carolina v. Alford*, 400 U.S. 25, 31

(1970); *Oppel v. Meachum*, 851 F.2d 34, 37 (2d Cir. 1988).  Furthermore, collateral review of such a plea is "generally limited to whether the pleas was voluntary, intelligent, and entered into with the advice of counsel." *Vasquez v. Filion*, 210 F. Supp. 2d at 197 (citing, *inter alia, Bousley v. U.S.*, 523 U.S. 614, 618 (1998); *U.S. v. Broce*, 488 U.S. 563, 569 (1989) (if the guilty plea was both counseled and voluntary, "then the conviction and the plea, as a general rule, foreclose the collateral attack.")).  The test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. at 31.  To determine the voluntariness of a plea, the court should consider all of the relevant circumstances, including the possibility of a heavier sentence . . . [as well as] whether the court addressed the defendant and explained his options." *Bello v. People*, 886 F. Supp. 1048, 1054 (W.D.N.Y. 1995) (citing *Magee v. Romano*, 799 F. Supp. 269, 300 (E.D.N.Y. 1992)).

During the plea proceeding, Reed was represented by counsel and had a full chance to consult with his attorney.  Tr. of Plea Allocution ["Plea"].  Reed's asseveration that he was unaware of the maximum term which would be imposed by his plea is in direct contradiction to the record as indicated by the following colloquy:

> COURT:      Mr. Bach [Reed's Trial Attorney], you have heard the proposal that has been set forth by the People in this matter.  Is this your understanding? And, have you recommended this disposition to your client?
>
> MR. BACH:  It is my understanding.  And, yes, I do recommend it, Judge.
>
> COURT:      And, in conversations that you have had with your client, does he seem that he understands the offer in this matter?  Has his discussions with you been on a normal basis?
>
> MR. BACH:  They have, Judge.  The only thing that we didn't discuss at length is

something that we have just discussed right now in this courtroom. And, that is the time, the maximum end of this sentence. We talked about that early on in our relationship. But, haven't talked about it lately. We have had—only been talking about the number of years, the minimum sentence. But, I think I have explained now to Mr. Reed's satisfaction that there would be the sentence consisting of a minimum of six and a maximum of eighteen. And, based upon his response, he is right now, Judge—I think he fully understands it. And, we are ready to proceed on that basis. Is that correct, Mr. Reed?

MR. REED:    Yes

COURT:    Well, you know, the reason I am asking those questions, at one point your client was found incompetent to stand trial. And, I want to make sure he understands all of this. And, that, as his attorney, you believe that he is present at this point to proceed with the disposition that was recommended by the District Attorney's Office?

MR. BACH:    Yes Judge. Since he has come back from Mid-Hudson I have had a number of meaningful, intelligent discussions with Mr. Reed. He fully knows what is happening. He is cognizant of all of the ramifications of the plea. I am satisfied that he is intellectually and emotionally capable of going forward and knows just what he is doing.

COURT:    Now, Mr. Reed, you have heard set forth on the record as to the recommendation of the People in this case. What is your understanding as to what the proposal is?

MR. REED:    Six to eighteen. Right?

COURT:    Okay. What will you be pleading guilty to?

MR. REED:    Attempted murder, second degree.

COURT:    Okay. So, you believe that you understand everything that is going on here? Do you have any questions as to what is transpiring in this case?

MR. REED:    I definitely understand.

Plea at pp. 3-6.

The Supreme Court has held that such declarations made in open court "carry a strong presumption

of verity[] [and, further,] subsequent presentation of conclusory allegations unsupported by specifics

is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

Reed knew that he had a right to a jury trial and that by entering a plea of guilty he would be waiving his rights to a trial as well as an appeal. Plea at p. 6. Reed acknowledged that it was his free and voluntary choice to plead guilty and that he was in fact guilty of the crime. Plea at pp. 6-7. Reed was also advised that he was pleading to a felony and that a subsequent felony conviction may categorize him as a persistent felony offender which would carry a sentence of life imprisonment. Plea at pp. 8-9. After Reed stated that he had not been coerced into pleading guilty and that it was being entered of his own free will, he pled guilty. Plea at pp. 9-10. As set forth above, such statements made at a plea allocution "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. at 74. In reviewing the record, this Court finds that after weighing all available choices, Reed, with the advice of counsel, knowingly, voluntarily, and intelligently entered a plea of guilty.[6] He therefore cannot collaterally attack the plea and this ground in support of his Petition should be denied. Furthermore, since his waiver of appeal was constitutional, it precludes review of Petitioner's remaining claims. *See, e.g., U.S. v. Pipitone*, 678 F.3d 34, 39 (2d Cir. 1995). Even if Reed's remaining claims were not precluded, they nevertheless lack merit.

### b. Sentence Unduly Harsh

Reed contends that the imposed sentence was unduly harsh since it far exceeds the minimum

---

[6] A pre-sentencing investigation report indicated that one co-defendant, Mitchell Johnson, pled guilty to one count of Assault in the First Degree and received an indeterminate term of incarceration of two and one-third to seven years; another co-defendant was convicted after trial on one count of Attempted Murder in the Second Degree and was sentenced to an indeterminate term of incarceration of twelve and one-half to twenty-five years. A. at p. 62. Furthermore, the probation officer who generated the report indicated that Reed had told him that though he insisted he was innocent, in light of his co-defendant's trial conviction and sentencing, he did not wish to risk such a lengthy jail sentence. *Id.*

authorized sentence of three to six years imprisonment.  It is well settled that an excessive sentence claim may not be raised as grounds for habeas corpus relief if the sentence is within the range prescribed by state law.  *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law.").  Upon his conviction, based on his valid guilty plea, for attempted murder in the second degree, a class A-I felony, the court sentenced Reed to an indeterminate prison term of six to eighteen years.  Reed's sentence falls within the range prescribed by state law.  N.Y. PENAL LAW §§ 125.25 & 70.00(2)-(3).  Thus, the Petition should be denied as to this ground.

### c. Motion to Vacate Guilty Plea

Reed asserts that his motion to withdraw his guilty plea was improperly denied and that the judge improperly refused to entertain his request and to hold a hearing.  The Appellate Division held that the judge's decision was not an abuse of discretion.  To review this claim, this Court must first assess whether the Appellate Division's holding was either contrary to or an unreasonable application of clearly established law.

"The proper analytical approach to deciding whether state criminal procedure rules violate due process is to determine if they 'offend [] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'"  *Hines v. Miller*, 318 F.3d 157, 161-62 (2d Cir. 2003) (quoting *Medina v. California*, 505 U.S. 437, 445 (1992)).  It is well settled that under both federal and state law, a defendant is not entitled, as a matter of right, to an evidentiary hearing on a motion to withdraw a guilty plea.  *See Hines*, 318 F.3d at 162 (citing federal and state cases).  Thus, the failure to hold a hearing does not offend deeply rooted or fundamental principles of justice.  Therefore, the Appellate Division's holding that, as the record establishes, the county

*-13-*

court "did not abuse its discretion in denying defendant's motion to vacate plea" was neither contrary to, nor an unreasonable application of, clearly established law. Thus, this aspect of Reed's Petition should be denied.

### 2. Unexhausted Claims

In his Petition, Reed asserts four additional grounds that have never been presented to the state courts for review: 1) he was incompetent to stand trial or enter plea; 2) he was not afforded a speedy trial; 3) failure of prosecution to disclose exculpatory evidence; and 4) insufficient trial counsel. Reed claims, both in his Amended Petition and his Traverse, that he filed 440 motions on the basis of grounds 3 and 4 above. He claims such motions were never responded to nor acknowledged. There is no evidence in the record, nor in the multiple exhibits attached to Reed's lengthy Traverse, which would substantiate such a claim. As to the first two grounds, it is not clear whether Petitioner intended to pursue these claims since he did not list them as grounds in his Traverse.

The general rule in this Circuit has been to preclude collateral attacks on a conviction when the petitioner failed to raise the issue on direct appeal and in doing so, dismiss the claim as unexhausted. *Zarvela v. Artuz*, 254 F.3d 374, 378-79 (2d Cir. 2001). This Court may, however, determine that there is an "absence of available state corrective process" under § 2254(b)(1)(B)(I) "if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile." *Aparicio*, 269 F.3d at 90. Under these circumstances, the claims would be deemed exhausted. However, if in reviewing the petition the federal court finds that claims are procedurally barred in state court, then they are similarly

procedurally barred in federal court.[7]  *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722 (1991)); *see also Reyes v. Keane*, 18 F.3d 136, 139 (2d Cir. 1997).

Under New York State procedural law, a party may not raise a claim in an Article 440 motion when such party unjustifiably failed to raise the issue on direct appeal. *Aparicio*, 269 F.3d at 91 (citing N.Y. CRIM. PROC. LAW § 440.10(2)(c)); *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994).[8]  Each of these asserted claims could have been raised in his appeal to the Appellate Division since they are based upon matters which were placed on the record.  Moreover, Reed cannot now file a second appeal with the Third Department as to these claim because a criminal defendant is "entitled to one (and only one) appeal" to the Appellate Division. *Aparicio*, 269 F.3d at 91. Therefore, these claims are deemed exhausted for purposes of his *habeas* application. *Spence v. Superintendent Great Meadow Correctional Facility*, 219 F.3d 162, 170 (2d Cir. 2000); *Strogov v. Attorney General of State of New York*, 191 F.3d 188, 193 (2d Cir. 1999) (failure to raise claim based upon matters contained within record on direct review to Appellate Division constitutes procedural default of such claim); *Senor v. Greiner,* 2002 WL 31102612, at *10  (E.D.N.Y. Sept. 18, 2002).

The Court's review of the substance of these procedurally defaulted claims is therefore conditioned upon Petitioner demonstrating cause for his default and resulting prejudice, or presenting evidence to show that he is "actually innocent" of the crime of which he was found

---

[7] When a claim is determined to be unexhausted, the petitioner is afforded an opportunity to bring the claims before the state court first, and then resubmit the *habeas* petition. When, however, a claim is determined to be procedurally defaulted, such a determination renders the claim adjudicated on the merits and any future *habeas* relief will be deemed a second or successive petition under § 2241.

[8] The Court notes that Petitioner has indicated he did not file any challenges to his convictions other than the direct appeal he filed with the Appellate Division. *See* Pet. at ¶ 13.

guilty.[9] *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Ramirez v. Attorney General of State of New York*, 280 F.3d 87, 94 (2d Cir. 2001); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 809 (2d Cir. 2000) (citing *Coleman*); *Strogov*, 191 F.3d at 193-94; *King v. Greiner*, 210 F. Supp. 2d 177, 182 (E.D.N.Y. 2002) (stating the court is precluded from considering unexhausted claims "unless petitioner can establish cause to excuse the default and prejudice, or actual innocence").

To establish legal cause for his or her procedural default, a petitioner must show that some objective external factor impeded his or her ability to comply with New York's procedural rules. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Restrepo v. Kelly*, 178 F.3d 634, 638 (2d Cir. 1999). Examples of external factors include interference by officials, ineffective assistance of counsel, or that "the factual or legal basis for a claim was not reasonably available" at trial nor on direct appeal. *Murray*, 477 U.S. at 488. Attorney ignorance or inadvertence is not cause, however, since the attorney is considered the petitioner's agent when acting, or failing to act, in furtherance of the litigation, the petitioner must "'bear the risk of attorney error.'" *Coleman*, 501 U.S. at 753 (quoting *Murray*, 477 U.S. at 488).

Petitioner has not demonstrated legal cause for his procedural defaults regarding any of the above claims. Since he cannot establish such cause, this Court need not decide whether he also suffered actual prejudice as to this claim because federal habeas relief on the basis of a procedurally defaulted claim is unavailable unless ***both*** cause and prejudice are demonstrated. *See, e.g., Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985); *Pou v. Keane*, 977 F. Supp. 577, 581 (N.D.N.Y. 1997) (Kahn, J.) (citing *Stepney*). Moreover, since Reed has not established that he is actually innocent of

---

[9] This final exception, however, is intended for the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *see also Lebron v. Mann*, 40 F.3d 561, 564 (2d Cir. 1994).

any of the crimes of which he was convicted, the Court recommends that Reed's Petition be denied as to these grounds for this procedural reason.

The Court notes that a recent Supreme Court decision may call into question the continuing viability of the procedural default rule in the context of claims of ineffective assistance of counsel in *habeas* petitions filed pursuant to § 2254. *See Massaro v. U.S.*, __ U.S. __, 123 S.Ct. 1690 (2003). In *Massaro*, the petitioner challenged his federal conviction pursuant to 28 U.S.C. § 2255 on the grounds that he received ineffective assistance of counsel, a claim he failed to raise on direct appeal. *Id.* at 1692-93. Noting the disagreements among the Circuit Courts, the Supreme Court held that a petitioner may invoke collateral review of his ineffective assistance claim regardless of whether such claim was raised on direct appeal, thus rendering the Second Circuit's procedural default rule inapplicable to petitions filed under § 2255. *Id.* at 1694-96. The Supreme Court, however, did not address the applicability of their holding to petitions brought under § 2254. Thus, the continuing viability of the procedural default rule as applied to ineffective assistance claims under § 2254 remains open.

To the extent the ruling applies, this Court may properly review the substance of Petitioner's claim. To prevail on an ineffective assistance of trial counsel claim, Petitioner must show that "counsel's performance fell below the objective standards of reasonableness dictated by prevailing professional norms and that there was a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different." *Rattray v. Brown*, 2003 WL 21057287, at *7 (E.D.N.Y. May 7, 2003) (citing *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984)).

Petitioner asserts his trial counsel was ineffective with regard to his advice on the plea

bargain. Petitioner's burden under *Strickland* in asserting such claims is indeed an onerous one. This Court is required to be highly deferential to the attorney and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Furthermore, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." *Id.* at 690.

After reviewing the entire record, it is clear that Petitioner has failed to meet his heightened burden in showing counsel engaged in deficient conduct which prejudiced the outcome of the case, and, therefore, these claims should be dismissed.

**WHEREFORE**, based on the foregoing, it is hereby

**RECOMMENDED**, that Reed's Petition be **DENIED** and **DISMISSED** in its entirety; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order, by regular mail, upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.

**<u>FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.</u>** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b), 6(a), & 6(e).

IT IS SO ORDERED

Dated:   December 9, 2003
         Albany, New York

RANDOLPH F. TREECE
UNITED STATES MAGISTRATE JUDGE

*-18-*